UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LOUIS R. COSTA,                    )
Petitioner.                        )
                                   )
v.                                 )        C.A. No. 00-12213-MLW
                                   )
TIMOTHY HALL, et al.,              )
Respondents.                       )

MEMORANDUM AND ORDER

WOLF, D.J.                                      December 2, 2010

I.   SUMMARY

     Louis R. Costa has filed a petition pursuant to 28 U.S.C.
§2254 seeking to have his conviction for two murders and life
sentence without possibility of parole vacated because of the
alleged ineffectiveness of his trial counsel in the Massachusetts
Superior Court, Joseph Balliro, Esq., and of his appellate
counsel, Charles Rankin, Esq.  The murders occurred in 1986, when
Costa was sixteen years old and, therefore, a juvenile.  At that
time, the laws of the Commonwealth of Massachusetts required that
the  Juvenile  Court  decide  whether  Costa  was  amenable  to
rehabilitation  in  the  juvenile  justice  system before becoming
eighteen years old or, if not, should be tried as an adult.  An
admitted participant in the murders, Richard Storella, testified
at the hearing concerning this issue (the "transfer hearing").
The  Juvenile  Court  decided  that  Costa  was  not  amenable  to

rehabilitation as a juvenile and transferred the case to the Superior Court. The Juvenile Court confirmed that decision after the issue was remanded for further findings.

Storella was unavailable and did not testify at Costa's first trial. Rather, his recorded testimony at the transfer hearing was presented to the jury. Costa was convicted and sentenced to life in prison without possibility of parole. On appeal, Costa contended that he had obtained evidence that impugned Storella's credibility and, therefore, his case should be remanded to the Juvenile Court for a new determination of whether the required probable cause to support his transfer to Superior Court existed. See Commonwealth v. DiBenedetto, 414 Mass. 37, 48 (1992) ("DiBenedetto I"). The Supreme Judicial Court, (the "SJC") rejected this request because the trial judge had ruled that the new evidence would have little or no bearing on Storella's credibility. Id. However, Costa's conviction and sentence were vacated because the SJC decided that Storella's recorded testimony had been improperly admitted. Id. at 38, 41, 50.

Storella testified at Costa's second trial and was an important witness. By that time, Storella had given several different and inconsistent accounts of the murders. See Commonwealth v. DiBenedetto, 427 Mass. 414, 415-16 (Mass. 1998)("DiBenedetto II"). In subsequent proceedings, Costa and

his co-defendant, Frank DiBenedetto, characterized Storella's trial testimony as "perjured." Id. at 423-24. Although the reliability of Storella's testimony was "strenuously challenged," id. at 416, he never wavered in identifying Costa as one of the murderers. Id. at 424. Costa was again convicted and sentenced to life in prison without the possibility of parole.

Costa moved again to have the decision that he be tried as an adult reversed, arguing that without Storella's unreliable testimony there was not probable cause to believe he had committed the murders. He did not contend that without Storella's testimony the Juvenile Court's decision that Costa was not amenable to rehabilitation as a juvenile was unsupportable or would have been different. Costa's request that the transfer decision be reversed was rejected. See DiBenedetto II, 427 Mass. at 423-24.

In Costa's second appeal of his conviction, Rankin argued many issues, including the claim that Storella's perjured testimony required a new Juvenile Court transfer hearing. See DiBenedetto II, 427 Mass. at 424. Although it characterized Rankin as "able appellate counsel," the SJC rejected the claim that a new juvenile transfer hearing was required and affirmed Costa's conviction. Id. at 416, 423-24.

Costa then became represented by David Apfel, Esq., his ardent and excellent counsel in the instant case. Apfel argued

3

to the Superior Court that Costa was deprived of his federal
Sixth Amendment right to the effective assistance of counsel
because neither Balliro nor Rankin argued that Storella's
perjured testimony at the second trial required that the Juvenile
Court reconsider and reverse its decision that Costa was not
amenable to rehabilitation as a juvenile and, therefore, should
be tried as an adult. The Superior Court rejected this
contention.

This alleged ineffectiveness of Balliro and Rankin was the
sole issue subsequently presented to the Single Justice of the
SJC, who was required to decide whether Costa was entitled to
further review by virtue of having presented a new and
substantial question. Federal claims of ineffectiveness of
counsel are analyzed under the standards established by the
Supreme Court in Strickland v. Washington, 466 U.S. 668, 687
(1984), which require that a moving party prove both a deficient
performance by counsel and resulting prejudice. In his decision
rejecting Costa's claim, the Single Justice did not use the term
"ineffective assistance of counsel" or cite Strickland.
Nevertheless, it is evident to this court that the Single Justice
understood that Costa was presenting a federal Strickland claim
and rejected it because the required prejudice was not proven.
This conclusion is founded, in part, on the Single Justice's
statement that Storella's testimony played only a "minor role" in

4

the decision that Costa should be tried as an adult, his review of the substantial, independent evidence that Costa was not amenable to rehabilitation, and his conclusion that "[t]he transfer judge gave thorough consideration to the appropriate factors in deciding to transfer the defendant, and the defendant has not shown that the decision should have been otherwise." Commonwealth v. Costa, No. SJ-2000-0024 at 2-3 (Mass. Sept. 14, 2000) ("Costa II").

Where, as here, the state court has decided the merits of a federal question, and not relied solely on an independent state ground, this court may review the state court decision. See Phoenix v. Matesanz, 189 F.3d 20, 25 (1st Cir. 1999)("Phoenix I"). However, the scope of that review is limited. Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this federal court may decide only if the state court's decision (1) was contrary to, or involved, an unreasonable application of clearly established federal law, as determined by the Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See 28 U.S.C. §2254(d).

As explained in this Memorandum, this court concludes that the Single Justice understood that Strickland required a showing of prejudice; supportably found that Storella's testimony was only a minor factor in the decision that Costa should be tried as

5

an adult; and reasonably applied federal law in concluding that Costa was not prejudiced by the failure of his counsel to challenge the Juvenile Court's decision that Costa was not amenable to rehabilitation as a juvenile after Storella's inconsistent and allegedly perjured testimony at Costa's second trial. This federal court must defer to that judgment. Moreover, the Single Justice's finding that the decision to transfer Costa out of the juvenile system was not a reversible error as a matter of State law may not be reviewed by this court and also defeats Costa's effort to prove the prejudice required to prevail under Strickland.

Costa also asserts that his trial and appellate counsel were ineffective because of their alleged failures to argue that the Commonwealth violated its constitutional duty, under Brady v. Maryland, 373 U.S. 83 (1963), to disclose material exculpatory evidence concerning Storella's immunity agreement. However, because this claim was not presented to the Single Justice, it has not been "exhausted" and this court may not consider it.

In the instant case, Mr. Apfel has provided information that suggests that Mr. Costa has been remarkably rehabilitated during his twenty-four years in prison. Costa has reportedly earned a place on the Dean's List of Boston University's Metropolitan College and has been selected to participate in a seminar, taught by two Harvard University professors, that includes seven inmates

and seven Harvard undergraduates. Mr. Apfel describes a man who has worked hard and well to reform his life while in prison. Costa's reported progress is admirable and may present a compelling basis for the commutation of his life sentence.

However, Costa is not entitled to relief from this court pursuant to 28 U.S.C. §2254. Therefore, his petition is being denied.

II. FACTS

As this court is deciding a collateral attack on a state conviction, it must presume that the state court's factual determinations are correct unless the petitioner rebuts this "presumption of correctness" by presenting "clear and convincing evidence" to the contrary. See 28 U.S.C. §2254(e)(1); Coombs v. Maine, 202 F.3d 14, 18 (1st Cir. 2000). This presumption of correctness applies whether the factual finding is made by a state trial court or a state appellate court. See Teti v. Bender, 507 F.3d 50, 58 (1st. Cir. 2007). In any event, the following facts are not disputed.

In 1986, at the age of sixteen, Costa was arrested and arraigned for the murder of two unarmed men, Joseph Bottari and Frank Chiuchiolo. See DiBenedetto I, 414 Mass. at 38, 47. Pursuant to Massachusetts General Laws ch. 119, §61,[1] the

---

[1] "[Massachusetts] General Laws [ch.] 119, §61, sets out the statutory requirements a judge must consider when determining

Juvenile Court held hearings to determine whether Costa should be

tried as a juvenile or an adult. Id. at 47 n.15.  "On March 13

and 14, 1986, a probable cause hearing was held in the Juvenile

_____

whether a transfer should take place." DiBenedetto I, 414 Mass.
at 47.  In 1986, M.G.L. ch. 119, §61 (1988 ed.) stated, in
relevant part:

> At said transfer hearing . . . the court shall find
> whether probable cause exists to believe that the child
> has committed the offense or violation as charged. If
> the court so finds, the court shall then consider, but
> shall not be limited to, evidence of the following
> factors: (a) the seriousness of the alleged offense;
> (b) the child's family, school and social history,
> including his court and juvenile delinquency record, if
> any; (c) adequate protection of the public, (d) the
> nature of any past treatment efforts for the child, and
> (e) the likelihood of rehabilitation of the child.

M.G.L. ch. 119, §61 was repealed in 1996 by the Youthful Offender
Act of 1996.  See 1996 Mass. Legis. Serv. ch. 200 (H.B. 5876) §7;
Commonwealth v. Dale D., 431 Mass. 757, 759 (Mass. 2000).
However, M.G.L. ch. 119, §61 was in effect during the relevant
period, since "Costa's core claims are based on critical failures
of trial and direct appellate counsel that occurred in 1994."
Costa's Obj. to Report and Recommendation at 1; see id. at 5; see
also DiBenedetto I, 414 Mass. at 47 n.16 (noting that ch. 119,
§61 was in effect at the time of the original transfer hearing).

Under present law, the Juvenile Court no longer has
jurisdiction over juveniles charged with murder committed when
they were between fourteen and seventeen years of age and would
not, therefore, have jurisdiction over Costa's case.  See M.G.L.
ch. 119, §74; Commonwealth v. Rivera, 50 Mass. App. Ct. 532, 533
n.2 (Mass. App. Ct. 2000).  Such a juvenile would necessarily be
prosecuted as an adult in the Superior Court.  See Andrew v.
Comm'r of Corr., 63 Mass. App. Ct. 912, 912 n.1 (Mass. App. Ct.
2005).

Court and probable cause was found." Id. at 47. On April 3 and 23, 1986, a transfer hearing for Costa was held in the Juvenile Court. Id. Seventeen-year-old Storella "testified at the probable cause portion of the transfer hearing and limited cross-examination was allowed." Id. at 41. On April 29, 1986, following the hearing, the Juvenile Court determined that: (1) probable cause existed to charge Costa with two counts of first degree murder; and (2) Costa would be tried as an adult because he was not amenable to rehabilitation in the juvenile system. Id. at 47.

On May 21, 1986, the Suffolk County grand jury returned two indictments against Costa, charging him with the murders of Bottari and Chiuchiolo. Id. In October, 1986, Costa moved for dismissal based on alleged irregularities in the Juvenile Court's transfer decision. Id. The Superior Court held a hearing and remanded the issue to the Juvenile Court for clarification of the findings concerning transfer. Id. After revised findings were made, the Superior Court denied the motion to dismiss and a motion to reconsider that decision. Id.

At trial, Costa was represented by Balliro. Because Storella was unavailable to testify, his recorded testimony at the transfer hearing before the Juvenile Court was presented to the jury. See DiBenedetto II, 427 Mass. at 415; DiBenedetto I, 414 Mass. at 41, 44. The SJC and the Court of Appeals for the

First Circuit have described Storella's testimony as "important" or "key" to the Commonwealth's case. See DiBenedetto I, 414 Mass. at 40 ("important"); DiBenedetto v. Hall, 272 F.3d 1, 4 (1st Cir. 2001)("DiBenedetto III") ("key") (addressing the habeas petition of Costa's co-defendant). Costa was convicted of deliberate, premeditated murder in the first degree of both Bottari and Chiuchiolo, and sentenced to life in prison without the possibility of parole. DiBenedetto II, 427 Mass. at 415.

Following his conviction, Costa obtained evidence that arguably cast doubt on Storella's credibility. See DiBenedetto I, 414 Mass. at 48. Accordingly, he moved for a new trial in the Superior Court. Id. The Superior Court denied the motion, ruling that the evidence "'would have had little or no value as material which would bear on the credibility of Storella.'" Id. Costa, on appeal, asserted that the evidence, which the Superior Court had deemed immaterial, warranted a remand to the Juvenile Court on the issue of whether there was the probable cause necessary to justify his transfer to Superior Court. Id. The SJC discussed both the evidence concerning probable cause and the evidence concerning the other elements of the decision concerning whether Costa should be tried as an adult, and found no error in the transfer case. Id. at 49-50.

Nevertheless, the SJC reversed Costa's conviction because Storella's recorded testimony at the transfer hearing was

improperly admitted at Costa's trial. Id. at 42. The SJC explained that the defendants did not have an adequate opportunity to cross-examine Storella at the transfer hearing and that the admission of the recorded testimony was, therefore, error. Id. Because Storella's testimony was important to the government's case, rather than merely cumulative of other evidence, the error was not harmless. Id. at 40-42. Accordingly, the SJC ordered a new trial. Id. at 42, 50.

At Costa's retrial, Storella testified again and, despite a promise of immunity, provided inconsistent accounts of the murders, including one in which Storella claimed that he himself had been one of the murderers. See DiBenedetto II, 427 Mass. at 415-16. Despite a vigorous challenge to the reliability of Storella's testimony, Costa was again convicted on both charges of first degree murder. Id. at 416.

Costa appealed his conviction again, pursuant to Massachusetts General Laws ch. 278, §33E[2], directly to the SJC.

_____

[2] M.G.L. ch. 278, §33E provides for direct review of capital cases, which includes all cases in which the defendant was tried and convicted for murder in the first degree. It states, in pertinent part:

In a capital case as hereinafter defined the entry in the supreme judicial court shall transfer to that court the whole case for its consideration of the law and the evidence. Upon such consideration the court may, if satisfied that the verdict was against the law or the weight of the evidence, or because of newly discovered evidence, or for any other reason that justice may

_Id._ at 416. Costa's appellate counsel, Rankin, argued that Storella's perjured testimony at the retrial required a new Juvenile Court transfer hearing. _Id._ at 423-24. The SJC found the claim without merit, explaining that, "[i]n his numerous versions of the crime, Storella never wavered from his position that Costa was one of the shooters." _Id._ at 424. The SJC noted that appellate counsel for Costa and DiBenedetto were "able," and had raised "multiple challenges to various decisions and rulings in the trial court." _Id._ at 416.

On July 6, 1999, represented by new counsel, Apfel, Costa filed a motion for post-conviction relief in the Superior Court, pursuant to Massachusetts Rule of Criminal Procedure 30(a).[3] _See_ Rule 30 Mot. Costa's Rule 30 motion raised two issues related to

---

require (a) order a new trial or (b) direct the entry of a verdict of a lesser degree of guilt, and remand the case to the superior court for the imposition of sentence. For the purpose of such review a capital case shall mean a case in which the defendant was tried on an indictment for murder in the first degree and was convicted of murder in the first degree.

[3] Massachusetts Rule of Criminal Procedure 30(a) states:

Unlawful Restraint. Any person who is imprisoned or whose liberty is restrained pursuant to a criminal conviction may at any time, as of right, file a written motion requesting the trial judge to release him or her or to correct the sentence then being served upon the ground that the confinement or restraint was imposed in violation of the Constitution or laws of the United States or of the Commonwealth of Massachusetts.

trial and appellate attorneys' alleged failure to effectively respond to Storella's perjured testimony. <u>See</u> Rule 30 Mot. at 2-3. First, Costa claimed that while his trial counsel, Balliro, challenged the Juvenile Court's probable cause findings on the basis of Storella's perjury, he was nevertheless ineffective for having failed to seek, on the basis of the same perjury, reconsideration of the Juvenile Court's finding that Costa was not amenable to rehabilitation in the juvenile justice system. <u>See</u> <u>Id.</u> at 8-9, 12. In a related argument, Costa contended that his appellate counsel, Rankin, was ineffective for failing to argue that the Juvenile Court's finding that Costa was not amenable to rehabilitation should have been reconsidered after Storella's perjury came to light, and for failing to argue that Costa should not have been tried as an adult, or that, at a minimum, he should have been sentenced as a juvenile. <u>Id.</u> at 10. Both trial and appellate counsel have stated that their failure to address the amenability finding was not strategic. <u>See</u> Balliro Aff. at 11; Rankin Aff. at 4.

Costa explicitly framed his claims as arising under the federal constitutional right to effective assistance of counsel. More specifically, Apfel wrote: "The failure of Costa's trial counsel and his direct appellate counsel to seek reconsideration of the Juvenile Court's nonamenability to rehabilitation finding rendered their assistance to Costa ineffective, in violation of

13

Costa's constitutional right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the Unites States Constitution, and under Article 12 of the Massachusetts Declaration of Rights." See Rule 30 Mot. at 4  12. The Memorandum in Support of these claims noted that "[t]he two-part test for establishing ineffective assistance of counsel is well settled as both a matter of state and federal law," and cited Strickland for the federal standard. See Pet. Memo. in Supp. of Rule 30 Mot. at 31.

In addition to the two claims of ineffective assistance of counsel for failure to raise the nonamenability issues (the "Strickland claims"), Costa also asserted in the Superior Court that he was entitled to a new hearing because trial and appellate counsel were ineffective for not raising the Commonwealth's alleged failure to disclose exculpatory evidence regarding Storella's immunity agreement as required by Brady, supra (the "Brady claims").[4]

In support of his Rule 30 motion in the Superior Court,

_____

[4] The claims of ineffective assistance of counsel for failing to raise the issue of nonamenability and the claims for failing to raise the Commonwealth's failure to disclose exculpatory evidence are both Strickland claims. However, in order to distinguish the discussions of these two sets of claims, the court refers to the first set of Strickland claims (based on a failure to raise the nonamenability issues) as the "Strickland claims" or the "ineffectiveness claims," and to the latter set of claims (based on a failure to raise the Commonwealth's failure to disclose material exculpatory evidence) as the "Brady claims."

14

Costa filed a 43-page memorandum of law. This submission almost exclusively addressed the <u>Strickland</u> claims and related arguments. As to the <u>Brady</u> claims, the memorandum's facts section included only one paragraph discussing the prosecution's failure to disclose the full extent of Storella's immunity agreement, and the argument contained only one footnote briefly describing the <u>Brady</u> issue. <u>See</u> Pet. Memo. in Supp. of Rule 30 Mot. at 5, 32 n.7.

In its memorandum of decision, the Superior Court addressed only the <u>Strickland</u> claims concerning the transfer decision and denied the Rule 30 motion on three grounds. <u>See</u> <u>Commonwealth v. Costa</u>, Nos. 058969, 058970 (Mass. Sup. Crim. Ct. Dec. 28, 1999) ("<u>Costa I</u>"). First, the Superior Court held that the issue of Storella's credibility had already been considered and found, in the first appeal to the SJC, <u>DiBenedetto I</u>, to be insufficient to warrant a new hearing and that Storella's inconsistent, or "perjured," statements had been specifically addressed and rejected as a basis for a new Juvenile Court transfer hearing in Costa's second appeal to the SJC, <u>DiBenedetto II</u>.[5] <u>Costa I</u> at 2.

---

[5] It appears that the Superior Court misunderstood the scope of the ruling in <u>DiBenedetto II</u>. As the Commonwealth acknowledges, <u>DiBenedetto II</u> addressed only whether Storella's inconsistent or "perjured" testimony required a new Juvenile Court determination of probable cause. <u>See</u> Resp. Mem. in Opp. to Pet. for Writ of Habeas Corpus at 19 n.8. The SJC was not, in <u>DiBenedetto II</u>, presented with the question of whether Storella's testimony required a reconsideration of the amenability issue.

Next, the Superior Court held that the SJC's standard of review under §33E was more favorable to Costa than the standard for ineffective assistance of counsel. Id.[6] Finally, the court found that Costa's claim concerning ineffective assistance of trial counsel was, in any event, waived because it was not raised on direct appeal. Id. at 2-3.

Next, Costa filed for leave to appeal the Superior Court's decision, again pursuant to Massachusetts General Law ch. 278, §33E. Under §33E, a defendant convicted of first degree murder, such as Costa, may not appeal the Superior Court's decision denying a motion for a new trial unless a Single Justice of the SJC, acting as a gatekeeper, finds that the appeal presents a

---

See DiBenedetto II at 416 (summarizing the issues before the SJC as "multiple challenges to various decisions and rulings in the trial court.") However, this court is reviewing the Single Justice's decision in Costa II. As described infra, it appears that the Single Justice understood that DiBenedetto II did not address the implications of Storella's changed testimony at Costa's second trial and did so himself.

[6] The Superior Court characterized the ineffective assistance of counsel standard as the "Saferian standard," referring to Commonwealth v. Saferian, 366 Mass. 89 (Mass. 1974). See e.g., Costa I at 2. As the First Circuit has written, "[t]he SJC has made clear that it ordinarily considers questions involving 'assistance of counsel' as coming 'within the meaning of the Sixth Amendment.'" Phoenix I, 189 F.3d at 27 (quoting Saferian, 366 Mass. at 89). The First Circuit has also characterized the M.G.L. ch. 278, §33E statutory standard as "more favorable to the defendant than the federal constitutional standard articulated by the Supreme Court in Strickland." Knight v. Spencer, 447 F.3d 6, 10 (1st Cir. 2006).

"new and substantial question which ought to be determined by the full court." M.G.L. ch. 278, §33E; <u>Pina v. Maloney</u>, 565 F.3d 48, 52 n.2 (1st Cir. 2009) (citing <u>Currie v. Matesanz</u>, 281 F.3d 261, 263 (1st Cir. 2002)).[7] Costa's §33E petition raised only his <u>Strickland</u> claims and, in doing so, expressly characterized the issue as the "ineffective assistance of trial and direct appellate counsel based on their failure to seek reconsideration of the Juvenile Court's Nonamenability Finding." <u>See</u> Mem. in Supp. of Pet. R. §33E Mot. at 12. Moreover, the memorandum in support of the motion states that the "issue," singular, raised in the preceding Rule 30 collateral attack was "new and substantial" within the meaning of §33E. <u>See</u> <u>id.</u> at 12, 17.

In a footnote, Costa stated that he had attached the briefs and the appendix of exhibits which had been submitted to the Superior Court, as well as the Superior Court's memorandum of

---

[7] M.G.L. ch. 278, §33E states, in pertinent part:

> After the entry of the appeal in a capital case and until the filing of the rescript by the supreme judicial court motions for a new trial shall be presented to that court and shall be dealt with by the full court, which may itself hear and determine such motions or remit the same to the trial judge for hearing and determination. If any motion is filed in the superior court after rescript, no appeal shall lie from the decision of that court upon such motion unless the appeal is allowed by a single justice of the supreme judicial court on the ground that it presents a new and substantial question which ought to be determined by the full court.

decision denying his Rule 30 motion. <u>See</u> <u>id.</u> at 1 n.1.[8] The referenced materials include over fifteen hundred pages.[9] The memorandum does not mention the Rule 30 motion itself.

Like the Superior Court when considering Costa's Rule 30 Motion, the Single Justice evaluating Costa's §33E petition did not perceive or decide his present <u>Brady</u> claims. <u>See</u> <u>Costa II</u>, at 2-3. Rather, he addressed only the <u>Strickland</u> claims concerning the transfer decision and rejected them. <u>Id.</u> In <u>Costa II</u>, the Single Justice explained that "Storella's credibility at the transfer hearing had been argued in both previous appeals, each time without success." <u>Id.</u> at 2. Moreover, "Storella's testimony played but a minor role, forming just one sentence in six pages of findings made by the transfer

---

[8] The footnote states, in relevant part:

> The trial court's Memorandum of Decision denying Costa's Rule 30 Motion is attached hereto as Exhibit A. The briefs submitted to the trial court in connection with the Rule 30 Motion, specifically the Memorandum in Support of Motion of Louis R. Costa for Post-Conviction Relief, the Commonwealth's Opposition, and Costa's Reply memorandum, are attached hereto as Exhibits B, C, and D, respectively. Costa also submitted an Appendix of Exhibits in Support of his Rule 30 Motion to the trial court, and has filed a copy of the same herewith.

[9] The submissions constitute Exhibits L through Q, and cross four volumes, of the supplemental materials submitted to this court.

judge." See id.[10]  Ultimately, the Single Justice reasoned that any inconsistencies in "Storella's testimony [did] not require a new transfer hearing [because] [t]he basic manner in which the victims were executed did not change, including [Costa's] culpability, for purposes of the question of his amenability to rehabilitation." Id.

The instant petition presents the Strickland claims that Costa's trial and appellate counsel were ineffective for failing to seek a new amenability finding in Juvenile Court.  Their alleged ineffectiveness is based on their failure to argue that Storella's perjury required a new amenability determination. Costa raises these Strickland issues in claims A, concerning trial counsel Balliro, and B, concerning appellate counsel Rankin.  Costa's Brady claims are asserted in claims C, relating to trial counsel, and D, concerning appellate counsel.

Pursuant to 28 U.S.C. §636(b)(1)(B), this court initially referred this matter to the Magistrate Judge.  The Magistrate Judge issued her Report and Recommendation, recommending that the petition be denied.  Costa objected to the recommendation only as

_____

[10]  The Single Justice miscounted or mischaracterized the transfer judge's decision.  There are a total of twenty five pages of analysis by the transfer judge.  The one sentence referencing Storella's testimony relates to eight pages, not six pages, of analysis of Costa's suitability to rehabilitation.

19

to claims A, B, C, and D.  The court has considered the issues as to which Costa objected de novo.  See 28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72.

III. ANALYSIS

A.  The Brady Claims Must Be Deleted

Respondents contend that Costa has not exhausted his Brady claims, claims C and D.  They are correct.  Therefore, these claims are being deleted.

The requirement of exhaustion is well-established. Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies.  See 28 U.S.C. §2254(b), (c); Janosky v. St. Amand, 594 F.3d 39, 50 (1st Cir. 2010).  In the interest of comity, the exhaustion requirement gives "the State the initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  See Picard v. Connor, 404 U.S. 270, 275 (1971) (internal citations omitted); Janosky, 594 F.3d at 50.  "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citing Duncan v. Henry, 513 U.S. 364, 365-366 (1995)).  Therefore, in order for a petitioner to exhaust a federal claim, he must present it "fairly and recognizably" to

state courts. Janosky, 594 F.3d at 50 (quoting Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997)). In other words, a petitioner "must have tendered the claim 'in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" Janosky, 594 F.3d at 50 (quoting Scarpa v. Dubois, 38 F.3d 1, 6 (1st Cir. 1994)).

The burden of proving that a federal claim has been exhausted at the state court level is on the petitioner. See Nadworny v. Fair, 872 F.2d 1093, 1098 (1st Cir. 1989). This burden "is a heavy one." Id. Costa has failed to meet it.

The Supreme Court has held that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin, 541 U.S. at 32. This general rule means that "an appealed issue cannot be considered as having been fairly presented to the SJC for exhaustion purposes unless the applicant has raised it within the four corners of [his petition to the state's highest court.]" Mele v. Fitchburg Dist. Ct., 850 F.2d 817, 823 (1st Cir. 1988).

There are circumstances in which a "fair presentation" is evaluated against the "backdrop" of previous filings. See Scarpa, 38 F.3d at 7. The First Circuit has held that the "backdrop

rule" applies so long as "it cannot be said that the petitioner has not clearly abandoned his or her federal claims on appeal to the SJC." Barresi v. Maloney 296 F.3d 48, 52 n.1 (1st Cir. 2002) (harmonizing the "backdrop rule" of Scarpa with the "four corners" rule of Mele); see also Josselyn v. Dennehy, 475 F.3d 1, 3-4 (1st Cir. 2007) (clarifying that, in Scarpa, the application for further appellate review "was ambiguous as to whether it included a particular federal claim" and, therefore, it was appropriate to examine prior filings as a backdrop). The First Circuit has continued to apply the "backdrop rule" after the Supreme Court's 2004 decision in Baldwin. See, e.g., Goodrich v. Hall, 448 F.3d 45, 48 (1st Cir. 2006).

Here, Costa's reliance on the backdrop of his previous filings is unavailing because he waived his Brady claims, C and D, in his §33E petition to the Single Justice. The Supreme Court has instructed that the state courts should not be forced to alter their ordinary procedures, that state judges should not be burdened by a duty to read previous opinions and filings, and that litigants should bear the primary responsibility for raising their federal claims. See Baldwin, 541 U.S. at 31-32 (explaining that requiring the highest state court to review lower appellate opinions to consider issues not in petitions for discretionary review "would impose a serious burden upon judges of state appellate courts"); Mele, 850 F.3d at 821-23 (state courts may

assume that a petitioner abandons claims he has neglected to pursue).

In the instant case, Costa's failure to raise his _Brady_ claims in his §33E petition and memorandum to the Single Justice constituted a waiver under state law. Before the courts of the Commonwealth, issues raised in a motion but unsupported by significant argument are deemed waived. _See_ Mass. R. App. P. 16(a)(4); Commonwealth v. Ellerbe, 430 Mass. 769, 772 n.7 (Mass. 2000); cf. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (in the First Circuit, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived"). Costa's _Brady_ claims were neither raised in his Rule §33E petition, nor argued.

Moreover, the footnote in Costa's petition to the Single Justice which referenced past filings did not expressly incorporate any previous arguments. Rather, it merely gave notice that previous filings were attached. _See_ Pet. Rule §33E Mot. at 1 n.1. In addition, Costa's §33E petition repeatedly referred to Storella's alleged perjury as "the issue" raised in his previous Rule 30 Motion, communicating to a reasonable person that there was only one matter to be decided. Costa also omitted key facts that underlay his present _Brady_ claims. More specifically, the §33E Motion did not mention the alleged prosecutorial misconduct regarding Storella's immunity agreement.

23

Furthermore, Costa's memorandum in support of his Rule 30 Motion in the Superior Court raised the present Brady claims only in a footnote.[11]  Accordingly, even if Costa had incorporated his previous arguments to his §33E Motion, the footnote reference did not give the SJC fair notice of his Brady claims.  That single footnote constituted a minute part of Costa's 43-page memorandum, which in turn constituted only a small part of the approximately 1,500 pages submitted to the Single Justice.  The fact that the Superior Court made no reference to any Brady claims in its decision indicates that Costa failed to assert it adequately to that court as well.  See Ellerbe, 430 Mass. at 772 n.7.

Costa's citation to DiPietro v. Coalter, No. 95-1422, 1995 WL 619766 (1st Cir. Oct. 23, 1995), does not alter the conclusion that he has not exhausted his Brady claims.  In DiPietro, the First Circuit distinguished Mele and held that the SJC had fair notice of a federal claim where: (1) a footnote in a petition to the SJC incorporated by reference claims discussed in a prior brief; and (2) the SJC asked to see the submissions previously made.  DiPietro, 1995 WL 619766, at *4.

Here, the footnote in question did not incorporate Costa's

---

[11] See Pet. Mem. in Supp. of R. 30 Mot. at 32 n.7.  While the Rule 30 Motion itself was more explicit on the issue, it was not attached to the §33E petition to the Single Justice.

24

prior claims, it only stated that previous filings were attached. See Mem. in Supp. of Pet. R. §33E Mot. at 1 n.1. Moreover, as explained earlier, the attached materials themselves were inadequate to give notice. Finally, the SJC did not request any submission that might have provided notice of the current Brady claims or indicated an awareness of them. Therefore, there is no indication that the Single Justice was aware of Costa's present Brady claims. Accordingly, Costa's Brady claims are not exhausted. See Janosky, 594 F.3d at 50-51. Thus, this court may not decide them. See id.

A petition that contains unexhausted claims is usually dismissed without prejudice. See Rose v. Lundy, 455 U.S. 509, 522 (1982). However, where dismissal would unfairly prejudice the possibility of federal review, the court may delete unexhausted claims and decide the remaining claims. See Rhines v. Weber, 544 U.S. 269, 278-79 (2005). Costa has asked that the court delete any unexhausted claims because he would be time-barred by AEDPA's one-year limitation period from seeking federal review if the instant petition were dismissed. See 28 U.S.C. 2244(d)(1); Pet. Req. to Delete Unexhausted Claims (Dec. 5, 2006) at 1-2. As dismissal would unfairly prejudice the possibility of federal review of Costa's ineffective assistance of counsel claims concerning the Juvenile Court's amenability decision, deletion of the unexhausted claims is appropriate.

B.  <u>The Strickland Claims Must Be Denied</u>

As explained earlier, the <u>Strickland</u> claims, claims A and B of Costa's petition, allege that Costa's trial and appellate counsel were ineffective because they failed to request reconsideration of the Juvenile Court's decision that Costa was not amenable to rehabilitation after the second trial, in 1994, when Storella presented inconsistent, allegedly perjured testimony.

A threshold question is whether the Single Justice who denied Costa's petition for leave to appeal the denial of his motion for a new trial reached the merits of Costa's ineffective assistance claims or denied relief based on an adequate and independent state ground. <u>See</u> <u>Phoenix I</u>, 189 F.3d at 25. "Whether the state court decision here is or is not impervious to habeas review depends on whether it rests, expressly or inferentially, on a state-law procedural waiver (or some other state law consideration), or whether, instead, it involves the resolution of the merits of [petitioner's] federal constitutional claim." <u>Id.</u>  "'If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal court review that might otherwise have been available.'" <u>Id.</u> at 25-26 (quoting <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 801 (1991)).

Here, although the Single Justice did not expressly

characterize the basis for his denial of Costa's §33E petition, the denial of post-conviction relief by the state court did not rest on an adequate and independent state ground, particularly, the ground that the issue was not new and substantial within the meaning of §33E, because it had been waived by not being raised earlier. The Superior Court denied Costa's Rule 30 motion based, in part, on procedural waiver, resulting from appellate counsel's failure to raise the alleged ineffectiveness of trial counsel on direct appeal. See Costa I at 3. However, this is not material to this court's analysis because the Single Justice's decision must be the "focus of [the court's] attention." Phoenix I, 189 F.3d at 25. The Single Justice did not state that the §33E petition was being denied because the ineffectiveness of trial counsel issue had been waived and, therefore, was not new, and his analysis is not consistent with such a theory. Cf. Yeboah-Sefah v. Ficco, 556 F.3d 53, 75 (1st Cir. 2009) (finding habeas review barred where a claim was not new because there was a procedural waiver below). Indeed, even if the Single Justice had relied on procedural waiver, the First Circuit has recently held that procedural waiver due to failure to raise ineffectiveness claims on direct appeal is not an adequate state ground precluding habeas review. See Pina, 565 F.3d at 52-53.

Unlike the Single Justice in Phoenix, the Single Justice in this case did not expressly use the phrase "ineffective

27

assistance of counsel" in rendering his decision.  See Phoenix v.
Matesanz, 233 F.3d 77, 82 (1st Cir. 2000)("Phoenix II").  Here,
the Single Justice wrote, apparently as a restatement of the
statutory requirement, that Costa had "failed to present a new
and substantial question."  Costa II at 2.  However, the Single
Justice's analysis, like that in Phoenix, evidently rested not on
a lack of novelty, but rather on the conclusion that the
ineffective assistance of counsel claims were not substantial
because the required prejudice had not been shown.  See Phoenix
I, 189 F.3d at 25 (citing Simpson v. Matesanz, 175 F.3d 200, 207
n.4 (1st Cir. 1999)).  As described earlier, the sole issue
before the Single Justice was the alleged ineffective assistance
of trial and appellate counsel in failing to seek reconsideration
of the Juvenile Court's finding that Costa was not amenable to
rehabilitation in the juvenile system in light of Storella's
perjury.  The Single Justice expressly considered new evidence,
made findings as to the importance of Storella's testimony to the
Juvenile Court's amenability finding, and concluded that, in
light of the minor role played by Storella's testimony, the
Juvenile Court considered the appropriate factors and would not
likely have decided otherwise.  See Costa II at 2-3.  While not
explicitly stating that the Strickland issue was being decided on
the merits, viewed in context, the Single Justice's reasoning
addressed whether the showing of prejudice required by Strickland

28

had been made.

The court concludes, therefore, that the Single Justice determined "that the ineffective assistance claim lacked substance, thus reaching its merits." See Phoenix I, 189 F.3d at 26. Accordingly, habeas review is not barred, as it would be if the Single Justice decided that matter based only on an adequate and independent state ground. See id.

If the Single Justice had not decided Costa's fairly presented federal claims of ineffective assistance of counsel, this court would be required to decide them de novo. See Lynch v. Ficco, 438 F.3d 35, 44 (1st Cir. 2006). However, once again, without mentioning ineffective assistance of counsel or Strickland, the Single Justice noted that "[t]he defendant claims that Richard Storella, an immunized witness at trial, so contradicted the testimony he gave at the juvenile transfer hearing as to undermine the basis for treating the defendant as an adult." Costa II at 1. The Single Justice went on to write that, "[o]n the question of defendant's amenability to rehabilitation, Storella's testimony played but a minor role, forming just one sentence in six pages of findings made by the transfer judge." Id. at 2. The Single Justice then explained why the other evidence fully justified the transfer decision. Id. at 2-3. Therefore, the Single Justice, without saying so expressly, decided that Costa had failed to prove the prejudice

required by <u>Strickland</u> and rejected Costa's federal ineffectiveness of counsel claims.

Because the Single Justice reached the merits of Costa's ineffective assistance claims, this court applies the familiar AEDPA standard, under which it must determine whether the decision below (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. <u>See</u> 28 U.S.C. §2254(d); <u>DeBurgo v. St. Amand</u>, 587 F.3d 61, 67 (1st Cir. 2009). As indicated earlier, the court must presume that the state court's factual determinations are correct unless the petitioner rebuts this "presumption of correctness" by coming forward with "clear and convincing evidence" to the contrary. <u>See</u> 28 U.S.C. §2254(e)(1); <u>Coombs</u>, 202 F.3d at 18; <u>DeBurgo</u>, 587 F.3d at 62 (federal court is "bound to 'accept the state court findings of fact unless [defendant] convinces [the court], by clear and convincing evidence, that they are in error."); <u>Lynch</u>, 438 F.3d at 39 (same). This presumption of correctness applies whether the factual finding is made by a state trial court or a state appellate court. <u>See</u> <u>Teti</u>, 507 F.3d at 58.

Therefore, the Single Justice's finding, as a matter of fact, that, "[o]n the question of the defendant's amenability to

rehabilitation, Storella's testimony played but a minor role,"[12] <u>Costa II</u> at 2, is presumed to be correct. This court finds that it is not rebutted by clear and convincing evidence. <u>See</u> <u>Teti</u>, 507 F.3d at 58.

As indicated earlier, in 1986, the relevant time for the purpose of this case, juvenile transfer proceedings were governed by Massachusetts General Laws ch. 119, §61, which created a two-step process for courts to follow. First, the court determined whether "probable cause exist[ed] to believe that the child ha[d] committed the offense or violation as charged." <u>See</u> M.G.L. ch. 119, §61 (1985). If so, the court determined whether the child was suitable for the juvenile justice system. <u>See</u> <u>id</u>. The statute required that, in deciding the second question, the court consider, but not limit itself to, five factors:

(a) the seriousness of the alleged offense;
(b) the child's family, school and social history, including his court and juvenile delinquency record, if any;
(c) adequate protection of the public;
(d) the nature of any past treatment efforts for the child; and
(e) the likelihood of rehabilitation of the child.

<u>Id</u>.

Under Massachusetts law, a "'judge ha[d] considerable

---

[12] Treating this statement as a finding of fact is consistent with the approach advocated by Costa in his objections to the Magistrate Judge's Report. <u>See</u> Costa's Obj. at 8 n.7 & 9.

discretion, within [the §61] statutory framework, to determine whether a child should be treated as an adult.'" <u>DiBenedetto I</u>, 414 Mass. at 47 (quoting <u>A Juvenile v. Commonwealth</u>, 370 Mass. 272, 282 (Mass. 1976)). A judge's findings on this issue were reviewed only for an abuse of discretion. <u>See</u> <u>id.</u> (citing <u>Commonwealth v. Matthews</u>, 548 N.E.2d 843, 847 (Mass. 1990)).

With regard to Costa, the Juvenile Court addressed each of the five statutory factors. In its original decision, it determined that the "bold predisposition and the severe atrocity of [Costa's] act bespeak the seriousness of the crimes for which he stands charged." <u>See</u> <u>Commonwealth v. Costa</u>, Nos. 860177, 860178, at 6 (Mass. Juv. Ct. Dep. Boston Div. April 28, 1986) ("<u>Costa Transfer</u>") (Supp. Mat. Ex. L-11). This finding flowed from the court's finding that probable cause existed to charge Costa with two counts of first degree murder. <u>See</u> <u>id.</u> at 2-3. While Storella's perjury infected those findings, the SJC determined that the infection was not so serious as to require a new probable cause hearing. <u>DiBenedetto II</u>, 427 Mass. at 423-24.

The Juvenile Court next considered Costa's family, school and social history. It determined that Costa's "family unit would not be an asset in any rehabilitative process"; that he was not successful in school; and that he was "a recalcitrant youth who only does what appeals to him, despite the norm or rules imposed on him both inside and outside of his home." <u>See</u> <u>Costa Transfer</u>

32

at 11, 11-13, 15. None of these findings depended on Storella's testimony. As to the nature of past treatment efforts, the Juvenile Court found that Costa had not sought or received any treatment for his problems. See id. Storella's perjury was also not relevant to this issue.

The Juvenile Court next considered the likelihood of Costa's rehabilitation, which is emphasized in Costa's instant petition. It found that Costa was "outside the realm of possibility for rehabilitation within the juvenile justice system." Id. at 23. This conclusion was based on eight pages of analysis focusing almost entirely on psychological issues described by the doctors treating Costa. Id. at 16-23. The Juvenile Court also noted that Costa's age (then sixteen years old) would not give the Department of Youth Services the time needed to "satisfy the defendant's dire need for long-term secure and rehabilitative treatment." Id. at 20. Moreover, Costa's family life was "fraught with turmoil not stability." Id. at 22. Thus, Costa was "unable to seek the support and strength he needs for change from an already emotionally-distraught family which itself is unable to see its problems." Id.

Within the eight pages of analysis of the likelihood of rehabilitation, there is one sentence referencing the atrocity of the crime with which Costa was charged. See id. at 22. It states: "[Costa's] fearless and deliberate action of pumping six

bullets into one victim and two into the other reflects his conscious disregard for the pain and suffering of another human being." Id. This sentence relies on Storella's testimony. However, while Storella's testimony changed in various ways, as the Single Justice noted in Costa II, the fundamental fact remains that Storella never altered his testimony that Costa was one of the murderers. See Costa II at 2.

The Juvenile Court found that the nature of the murders was only one of several factors –- including a history of aggressive behavior, Costa's lack of remorse, his disrespect for authority, his lack of family support and his age –- that contributed to the conclusion that Costa was not amenable to rehabilitation and should be tried as an adult. These additional factors were not based on Storella's allegedly perjured testimony.

Therefore, the factual basis for the Single Justice's conclusion has not been rebutted by clear and convincing evidence. See 28 U.S.C. §2254(e)(1); Coombs, 202 F.3d at 18. Accordingly, the Single Justice's decision that Storella's perjury was not important to the decision that Costa was not amenable to rehabilitation as a juvenile must be respected by this federal court. See Teti, 507 F.3d at 58.

As there is not a proper basis to reject the factual findings of the Single Justice, the court must consider whether the outcome of the Single Justice's Strickland analysis was

contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. See §2254(d); Glacken v. Dickhaut; 585 F.3d 547, 550 (1st Cir. 2009); O'Laughlin v. O'Brien, 568 F.3d 287, 298 (2009); Healy v. Spencer, 453 F.3d 21, 25 (1st Cir. 2006). "The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel," but it "does not guarantee a defendant a letter-perfect defense or a successful defense." Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993) (citations omitted). Therefore, "not every error amounts to ineffectiveness." Cofske v. United States, 290 F.3d 437, 441 (1st Cir. 2002).

"To succeed on a claim of ineffective assistance of counsel under the Sixth Amendment, [a movant] must show both deficient performance by counsel and resulting prejudice." Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010) (citing Strickland, 466 U.S. at 687); see Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "The burden is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence." Lema, 987 F.2d at 51.

"In order to satisfy the 'deficient performance' prong, [a movant] must show that his trial counsel's representation 'fell below an objective standard of reasonableness.'" _Peralta_, 597 F.3d at 79 (_quoting_ _Strickland_, 466 U.S. at 688). The court must determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." _Strickland_, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge in a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." _Strickland_, 466 U.S. at 690. "The defendant, as a result, must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." _Phoenix II_, 233 F.3d at 81 (internal citations omitted); _see also_ _Prou v. United States_, 199 F.3d 37, 47-48 (1st Cir. 1999); _Arroyo v. United States_, 195 F.3d 54, 55 (1st Cir. 1999).

As to the second prong, "[u]nder _Strickland_, a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." _Porter v. McCollum_, 130 S. Ct. 447, 452 (2009) (quoting _Strickland_, 446 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome."

Strickland, 466 U.S. at 694; see also Peralta, 597 F.3d at 79-80.

To show prejudice, Costa must demonstrate that, had his counsel requested reconsideration of the decision that Costa was not likely to be rehabilitated as a juvenile following Storella's inconsistent and allegedly perjured testimony, it is reasonably probable that either (1) the Juvenile Court would have exercised its discretion to keep Costa in the juvenile system; or (2) the Juvenile Court would have committed reversible error if it again decided that Costa should be tried as an adult.  In this case, the court need not address or resolve the deficient performance component of the Strickland standard because the Single Justice reasonably concluded that Costa did not prove the required prejudice.  See Strickland, 466 U.S. at 697 (noting that a court need not determine whether there was deficient performance of counsel before examining the prejudice suffered by the defendant as a result of the alleged deficiencies).

Regarding the first theory of prejudice --that without the testimony Storella later changed, the Juvenile Court probably would not have decided that Costa should have been tried as an adult-- the Single Justice reasonably found, in effect, that Costa had not proven that, if presented with the new information concerning Storella's testimony, it was reasonably probable that the Juvenile Court would have exercised its discretion to treat Costa as a juvenile.  This is the implication of the Single

Justice's finding that "Storella's testimony played but a minor role" in the amenability decision. Costa II at 2. This is a finding that this court is bound to accept for the reasons previously explained. See Teti, 507 F.3d at 58. Thus, for the purpose of the instant analysis, the new information tending to undermine Storella's credibility involves only one "minor" factor in the Juvenile Court's reasoning.

Where a decision-maker must weigh a variety of factors, the availability of new evidence that does not substantially alter the overall weight of the evidence is not sufficient to create a reasonable probability that the result would have been different. See Strickland, 466 U.S. at 700. In Strickland, for example, in the somewhat analogous context of capital sentencing, the Supreme Court held that the failure to introduce evidence that "would barely have altered the sentencing profile" is not prejudicial.[13] See id. at 699-700. In light of this Supreme Court jurisprudence, it was not unreasonable for the Single Justice to conclude that new evidence tending to undercut testimony that played "but a minor role", see Costa II at 2, in the transfer

---

[13] This principle was recently reaffirmed in Bobby v. Van Hook, another case involving a capital sentencing, in which the Court rejected the contention that prejudice could be shown where the new information would have played a relatively minor role in the decision. See 130 S. Ct. 13, 19-20 (2009).

decision was insufficient to prove prejudice.

Regarding the second theory of prejudice -- that it would have been reversible error for the Juvenile Court to have decided to transfer Costa after Storella's inconsistent and allegedly perjured testimony at the second trial -- the Single Justice decided, in effect, that Costa had not shown prejudice because, even in light of Storella's testimony at the second trial, the decision to transfer Costa out of the juvenile system was not reversible error as a matter of state law. See Costa II at 2-3. Because this is a conclusion of state law, this court may not review it. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Legal questions resolved in state court as a matter of state law are not reviewable by a federal court in a §2254 proceeding. See Estelle, 502 U.S. at 67-68 (emphasizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). "Federal courts sitting in habeas must accept state court rulings on state law issues." Rodriguez v. Spencer, 412 F.3d 29, 37 (1st Cir. 2005). Therefore, "[a]n inquiry into the correctness of a ruling on state law issues 'is no part of a federal court's habeas review of a state conviction.'" Id. (quoting Estelle, 502 U.S. at 67). "The rule, then, is that a federal habeas court will not disturb the state courts' construction or application of state law unless it can be shown that such construction or application offends the

39

Constitution or some (applicable) federal statute." <u>Hamm v. Latessa</u>, 72 F.3d 947, 954 (1st Cir. 1995). Here, the state courts have already determined that the Juvenile Court's transfer determination, as a whole and as a matter of state law, was legally justified and not undermined by Storella's inconsistent and allegedly perjured testimony at Costa's second trial.

In <u>DiBenedetto I</u>, the SJC discussed specifically the issue of Costa's suitability for the juvenile justice system. <u>See</u> 414 Mass. at 48-50. It wrote that, under Massachusetts law, "the nature of the crimes, Costa's family, school, and social history, his age, as well as Costa's lack of respect for authority" were sufficient to warrant Costa's transfer from Juvenile Court for trial as an adult in Superior Court. <u>Id.</u> at 50. Therefore, the SJC determined that the transfer decision was proper under Massachusetts law.

However, <u>DiBenedetto I</u> alone does not resolve the issue presented by the instant petition because at the time of that decision Storella had not testified inconsistently at Costa's second trial. However, the implications of Storella's later testimony were addressed in the SJC's decisions in <u>DiBenedetto II</u> and <u>Costa II</u>. The SJC has held that Storella's testimony at the second trial did not require a new transfer hearing to determine

probable cause, see DiBenedetto II, 427 Mass. at 423-24,[14] or

amenability, see Costa II at 2. As described earlier, the Single

Justice denied Costa's §33E application, reasoning that:

> On the question of the defendant's amenability to
> rehabilitation, Storella's testimony played but a minor
> role, forming just one sentence in six pages of
> findings made by the transfer judge. We previously
> determined that there was no error in the decision to
> transfer the defendant to the Superior Court for trial
> as an adult, see Commonwealth v. DiBenedetto, 414 Mass.
> 37, 48-50 (1992). The differences in Storella's
> testimony do not require a new transfer hearing. The
> basic manner in which the victims were executed did not
> change, including the defendant's culpability, for
> purposes of the question of his amenability to
> rehabilitation. The defendant ignores the fact that
> Storella testified on both occasions that the defendant
> admitted shooting both victims. Further, forensic
> evidence established that one victim was shot sixteen
> (16) times by three different weapons, and the other
> victim was shot seven (7) times by the same three
> handguns. Both were shot at close range. The
> defendant used one of those guns. After retrial, he
> was convicted of murdering both victims, and the
> convictions have been affirmed. See Commonwealth v.
> DiBenedetto, 427 Mass. 414 (1998). The transfer judge
> gave th[o]rough consideration to the appropriate
> factors in deciding to transfer the defendant, and the
> defendant has not shown that the decision should have
> been otherwise.

Costa II at 2.

As indicated earlier, the state courts' interpretation and

---

[14] As indicated earlier, the Commonwealth concedes that the
"SJC's rulings in DiBenedetto I and DiBenedetto II were made in
the context of Costa's challenges to the juvenile court's
probable cause finding." See Resp. Mem. in Opp. to Pet. for Writ
of Habeas Corpus at 19 n.8.

application of state law must be respected by this court.  <u>See</u>
<u>Estelle</u>, 502 U.S. at 67-68, <u>Hamm</u>, 72 F.3d at 954 (<u>citing</u> <u>Hebert</u>
<u>v. Louisiana</u>, 272 U.S. 312, 316 (1926)).  Because the SJC has
found that the transfer decision was not erroneous, even in light
of Storella's alleged perjury, this federal court cannot review
or revise this decision because it concerns state rather than
federal law.  <u>See</u> <u>Estelle</u>, 502 U.S. at 67-68; <u>Strickland</u>, 466
U.S. at 687.

In summary, having reviewed the Single Justice's factual
findings and found them to be adequately supported, and having
accepted the state courts' conclusions with respect to state law,
this court finds that the Single Justice reasonably concluded
that Costa has not shown prejudice as required by <u>Strickland</u>.
<u>See</u> <u>Costa II</u>, at 2-3.  More specifically, the Single Justice had
a proper basis to find that Storella's alleged perjury played
only a minor role in the transfer decision and, therefore,
reasonably concluded that Costa had not proven the prejudice
required to obtain relief pursuant to <u>Strickland</u>.  In addition,
the Single Justice decided that, as a matter of state law, there
was no error in the transfer decision and, therefore, Costa was
not prejudiced concerning it even in view of Storella's allegedly
perjured testimony at the second trial, or by his attorneys'
failures to seek a new transfer determination based upon
Storella's changed testimony.  Accordingly, the <u>Strickland</u>

42

claims, claims A and B, are being denied. <u>See</u> 28 U.S.C. §2254(d).

C. <u>Remaining Claims</u>

Costa objected only to the Magistrate Judge's recommendations regarding claims A, B, C and D. A party waives his right to appeal all matters decided in a Magistrate Judge's Report and Recommendation to which he or she does not timely object. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 147-48 (1985); <u>Santiago v. Canon U.S.A., Inc.</u>, 138 F.3d 1, 4 (1st Cir. 1998) ("[A] party's failure to assert a specific objection to a report and recommendation irretrievably waives any right to review by the district court and the court of appeals."); <u>Park Motor Mart, Inc., v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980). Absent objections, the court may adopt the report and recommendation of the magistrate judge.[15] <u>Thomas</u>, 474 U.S. at 149-50. Accordingly, the Magistrate Judge's Report and Recommendation is being adopted as to the remaining claims.

IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254

---

[15] Although the Commonwealth objected to claims other than A, B, C and D, it is unnecessary to resolve those objections, as the outcome is the same regardless of whether the court adopts respondents' proposals or the Magistrate Judge's original conclusions.

Proceedings, the court must "issue or deny a certificate of appealability [("COA")] when it enters a final order adverse to the applicant." To receive a COA, Costa must make "a substantial showing of a denial of a constitutional right." See 28 U.S.C. §2253(c)(3). Costa must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Id. at 338.

Although the court believes that its decisions on both the Strickland and the Brady claims, claims A, B, C, and D, are correct, the claims are complex and the decisions are sufficiently debatable to warrant the issuance of a COA concerning them. In all other respects, a COA is being denied. To the extent that the court has denied a COA, Costa may seek a COA on those issues from the Court of Appeals for the First Circuit. See §2254 Rule 11(a).

V. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Petitioner's Request to Delete Any Unexhausted Claims (Docket No. 66) is ALLOWED.

2.    Claims C and D are DELETED.

3.    The Petition For A Writ Of Habeas Corpus (Docket No. 1) is DENIED.

4.    A COA is ISSUED for Claims A, B, C and D.    A COA is DENIED for all other claims.

 /s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE